**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **NARJES MEHRABI** | **CIVIL ACTION NO. 26-0201** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **LISA BOWEN** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Petitioner Narjes Mehrabi,[1] a detainee at Richwood Correctional Center ("RCC") in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") who proceeds pro se, petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.  [doc. # 9].  For reasons below, the Court should grant Petitioner's request for release from custody.

## Background

Petitioner is a citizen of Iran.  She entered the United States of America "through the Eagle Pass border in Texas" on approximately November 29, 2024.  [doc. #s 1-3, p. 1; 3-1, p. 3].  She has "been held in ICE custody since January 20, 2025."  [doc. # 3, p. 8].  On April 1, 2025, an immigration judge ordered Petitioner removed from the United States.  [doc. # 9-1, p. 2].  On June 18, 2025, an immigration judge granted Petitioner withholding of removal to Iran.  [doc. #s

---

[1] Petitioner's "A-Number" is 221-296-617.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

1-2, pp. 1-5; 3-2, pp. 12-16].  Petitioner did not appeal the order to the Board of Immigration Appeals.  [doc. # 1, p. 4].

Petitioner filed this proceeding on approximately January 18, 2026.  [doc. # 1, p. 8]. Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), she claims that she has "been detained by ICE beyond the removal period authorized by statute," that she has been detained for a prolonged period, and that "ICE is not likely to remove [her] in the near future."  *Id.* at 6.  She maintains that throughout her detention, she has "fully cooperated [with] all legal and administrative requirements," attending all scheduled court hearings, complying with all instructions, and submitting all requested documentation to her case officer and the court.  [doc. # 1-3, p. 1].

Petitioner states that to date, "no third country has been proposed for [her] removal, nor [has she] been provided with any documentation indicating that such arrangements are in progress."  [doc. # 3, p. 1].  She adds, "ICE has not provided any valid documentation justifying [her] prolonged detention."  *Id.*  The Iranian "consulate has not issued travel documents" or agreed to accept Petitioner's return.  *Id.* at 8.

Petitioner claimed in her initial petition that her conditions of confinement at RCC are unlawful and that she is not receiving adequate medical care.  [doc. # 1-3, pp. 1-2].  However, she appears to have voluntarily dismissed these claims in her amended petition after the Court informed her that the claims cannot be brought in a habeas corpus proceeding.  [doc. # 3].

For relief, Petitioner seeks immediate release from custody.  [doc. # 1, p. 7].

Respondents opposed the petition on March 30, 2026.  [doc. # 9].  They maintain: "[T]here is a significant likelihood of removal for this respondent in the reasonably foreseeable future. The record reflects that the Federal Respondents are consistently making reasonable efforts to obtain travel documents to prepare the petitioner for removal."  *Id.* at 14.

**<u>Jurisdiction</u>**

Under 28 U.S.C. § 2241(c)(3), the Court has federal subject-matter jurisdiction over habeas petitions filed by aliens claiming they are being detained "in violation of the Constitution or laws or treaties of the United States." *See Zadvydas*, 533 U.S. at 687. The 'REAL ID Act' of 2005 divests federal courts of jurisdiction over several categories of immigration proceedings. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005). District courts may not review challenges to final orders of removal. 8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). And no federal court may review any action that is committed to the discretion of the Attorney General or the DHS Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), including decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole," 8 U.S.C. § 1226(e).

The Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *see Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While§ 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

Despite any statutory limitations on judicial review, federal courts retain "jurisdiction to review [an alien's] detention insofar as that detention presents constitutional issues," *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005), such as "questions of law regarding the AG's statutory authority or the regulatory framework" governing immigration detention, *Garza-Garcia*

*v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Here, under *Zadvydas*, this Court enjoys jurisdiction over Petitioner's constitutional claim.

### Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v.*

*Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions."  *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters."  *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  To date, she has been detained 350 days (or 11 months, 15 days) following her final order of removal.  In addition, she meets her initial burden of providing good reason to believe that there is no significant likelihood of her removal in the reasonably foreseeable future.  For 350 days, the Government has been unable to obtain a travel document for her despite her full cooperation.  Petitioner has complied with "all legal and administrative requirements," attended all scheduled court hearings, complied with all instructions, and submitted all requested documentation to her case officer and the court.  She also persuasively argues that "no third country has been proposed for [her] removal, nor [has she] been provided with any documentation indicating that such arrangements are in progress."  And "ICE has not provided any valid documentation justifying [her] prolonged detention."

Respondents do not rebut Petitioner's showing.  They do not present any evidence to rebut Petitioner's arguments above.  Respondents do not provide any evidence indicating that,

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists."  *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

for instance, travel documents are forthcoming or that ICE has made meaningful progress in effectuating Petitioner's removal.

Respondents recount that on approximately July 2, 2025, "ERO emailed an I-241, Request for Acceptance of Alien, to the Embassy of Moldova and Kosovo." [doc. # 9, p. 6]. However, "As of August 14, 2025, ERO had received no responses from the Embassy of Moldova or Kosovo for the I-241 Request for Acceptance of Alien." *Id.* Respondents also recount that on approximately "October 14, 2025, ERO sent an email to ERO Headquarters requesting guidance on Petitioner's granting of Withholding." [doc. # 9]. On approximately November 26, 2025, "ERO emailed ERO Headquarters requesting guidance on Petitioner's Withholding grant." *Id.* at 7. "On or about December 9, 2025, ERO Headquarters responded to the inquiries stating they are actively working with the Department of State and the Department of Homeland Security on avenues to remove aliens to a third country." *Id.* On "December 29, 2025, ERO emailed ERO Headquarters requesting an alternate country removal guidance regarding Petitioner's Withholding grant." *Id.* at 8. On an unidentified date, "ERO Headquarters advised they are actively working with the Department of State and DHS on avenues to remove Petitioner to a third country." *Id.* On "February 16, 2026, ERO sent an email to ERO Headquarters requesting guidance on the third country removal, as Petitioner was granted Withholding." *Id.* "On or about March 26, 2026, ERO sent an email to ERO Headquarters for guidance on Withholding and a third country removal." *Id.*

That Respondents (i) asked the embassies of Moldova and Kosovo approximately nine months ago to accept Petitioner and received no response, (ii) requested guidance on removal in October and November 2025, and received no concrete indication of progress in response, (iii) requested guidance in December 2025, and received no concrete indication of progress in

response, and (iv) requested guidance in February and March 2026 yet did not receive any response, does not establish that removal is significantly likely to occur in the reasonably foreseeable future.  Likewise, that Respondents have not obtained a travel document following the actions above suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future.  Respondents essentially present requests—which are indicative of some efforts at progress—followed by no indication of progress in approximately nine months along with no indication that progress will occur.  The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *See Zadvydas*, 533 U.S. at 701.

Respondents have not even identified a third country for Petitioner's removal, much less made any efforts at securing a travel document.  From the record, it appears that they have not even started the process of attempting to remove Petitioner.  And they do not state how long it will take after the process begins.  Yet, they still detain her.  While not dispositive, the undersigned finds it persuasive that Petitioner has endured 451 days of total detention (or 1 year, 2 months, 27 days).

Respondents provide no evidence—or reasons to conclude—that  a travel document is forthcoming.[4]  They do not, for example, provide any evidence that they have made progress in

---

[4] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at \*3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at \*1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than

obtaining travel documents, that they have been communicating with any country about

Petitioner's deportation (apart from sending the unanswered requests above), that any country

has recently accepted others similarly situated to Petitioner, that any country has an agreement or

treaty with the United States affecting Petitioner's removal, or that any country is willing to

accept Petitioner.[5, 6]

Respondents cannot rest on bald assertions that removal is foreseeable without providing

sufficient supporting evidence. "A theoretical possibility of eventually being removed does not

---

stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[5] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[6] *See generally Heagan v. Jolicoeur*, 2006 WL 897709, at *3 (W.D. Tex. Mar. 31, 2006) ("Other than providing evidence that they are working with the governments of Liberia and Ghana to establish Petitioner's identity, Respondents have not presented evidence regarding the time period that they will need to establish Petitioner's identity. Nor have the Respondents, using their significant expertise, established any time period in which they believe they will be able to effectuate Petitioner's removal . . . . Respondents have not provided the Court with, nor does the Court envision, a way to determine whether the Liberian, Nigerian or Ghanian governments will issue the necessary travel documents to effect Petitioner's removal in the reasonably foreseeable future."); *Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal.  While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at \*5 (S.D. Tex. 2008).  As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Petitioner need not show that removal is impossible.  *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[7]

### Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Narjes Mehrabi's petition for habeas corpus be **GRANTED**: Respondents, including the Warden of Richwood Correctional Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) if Petitioner has family and/or an emergency contact on record, notify them of the exact location and time of her release no less than two hours before her release.

---

[7] The undersigned finds no need to address any claim or request for relief not addressed herein.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[8]  Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming her release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 16th day of April, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge

---

[8] In other words, it is the intent of the Court that Petitioner shall not be released only to be immediately taken back into custody.  The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.